1  JOHNSON & PHAM, LLP
   Christopher D. Johnson, SBN: 222698
2        E-mail: cjohnson@johnsonpham.com
   Christopher Q. Pham, SBN: 206697
3        E-mail: cpham@johnsonpham.com
   Marcus F. Chaney, SBN: 245227
4        Email: mchaney@johnsonpham.com
   Nicole L. Drey, SBN: 250235
5        E-mail: ndrey@johnsonpham.com
   Hung Q. Pham, SBN: 276613
6        E-mail: ppham@johnsonpham.com
7  6355 Topanga Canyon Boulevard, Suite 326
   Woodland Hills, California 91367
   Telephone:  (818) 888-7540
8  Facsimile:   (818) 888-7544

9  Attorneys for Plaintiff
   FOSSIL GROUP, INC.
10

11               **UNITED STATES DISTRICT COURT**

12               **CENTRAL DISTRICT OF CALIFORNIA**

13

| FOSSIL GROUP, INC., a Delaware Corporation, | Case No.: 2:16-cv-02599 |
|---|---|
| Plaintiffs, | **COMPLAINT FOR DAMAGES:** |
| v. | **(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114/***Lanham Act* § 32(a)**]** |
| ELIOT ANDREU, an Individual; and DOES 1-10, inclusive, | **(2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION [15 U.S.C. § 1125(a)/***Lanham Act* § 43(a)**]** |
| Defendants. | **(3) TRADEMARK DILUTION [15 U.S.C. § 1125(c)]** |
| | **(4) UNFAIR BUSINESS PRACTICES [*CALIFORNIA BUSINESS & PROFESSIONS CODE* § 17200]** |
| | **[DEMAND FOR JURY TRIAL]** |

1
**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff FOSSIL GROUP, INC., a Delaware Corporation, hereby files its Complaint for Damages and Declaratory Relief ("Complaint") against Defendant ELIOT ANDREU, an individual; and DOES 1-10, inclusive (collectively "Defendants").

## PARTIES

1. Plaintiff FOSSIL GROUP, INC. ("Plaintiff"), is now, and was at the time of the filing of this Complaint and at all intervening times, a Delaware corporation having a sales office located at 12121 Wilshire Blvd., Suite 610, Los Angeles, California 90025.

2. Plaintiff is informed and believes that Defendant ELIOT ANDREU ("Defendant"), is now, and was at the time of the filing of this Complaint, and at all intervening times, an individual residing and conducting interstate commerce business from Moultrie, Georgia.

3. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said defendants by such fictitious names (collectively "Defendants"). When the true names and capacities of said defendants have been ascertained, Plaintiff will amend this pleading accordingly.

## JURISDICTION / VENUE

4. This Court has jurisdiction over the subject matter of the First, Second, and Third Causes of Action (violation of the *Lanham Act*) pursuant to 15 U.S.C. § 1121 and/or 28 U.S.C. §§ 1331 and/or 1338(a).

5. This Court has personal jurisdiction over Defendants as Defendants conduct business and have committed the tortious activities of trademark infringement and unfair competition in this district. Defendants have sufficient minimum contacts with this district such that the exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice. Among other things, Defendants have advertised, offered to

sell, sold, and distributed watches that infringe the trademarks of Diesel S.p.A (to which Plaintiff holds the exclusive license for watches) to consumers within this judicial district for Defendants' own commercial gain and have exploited California's extensive marketplace, wherein Plaintiff maintains substantial business contacts and financial interests. Defendants have also offered to sell and actually sold counterfeit products (described more fully herein) using interactive internet websites knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase said counterfeit goods from Defendants, believing that they were authentic goods manufactured and distributed by Plaintiff or its authorized manufacturers.

6. Additionally, supplemental jurisdiction exists over Defendants because, on information and belief, Defendants conduct business in California and in this judicial district, have purposefully directed action to California and this district, or have otherwise availed themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

7. Venue is proper in this district, *inter alia*, pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and has caused damage to Plaintiff in this district. The counterfeit products featuring the DIESEL trademark were purchased in California, and Defendants purposefully shipped the counterfeit products to California. Additionally, the counterfeit products featuring the DIESEL trademark were listed and marketed through www.ebay.com, an online ecommerce platform owned and operated by eBay, Inc., a California corporation. Moreover, the sales of the counterfeit products featuring the DIESEL trademark sold by Defendants were finalized and processed electronically with funds through PayPal.com, a service provided by PayPal, Inc., a financial institution in California. Defendants' actions within this district

1 | directly interfere with and damage Plaintiff's commercial business and harm
2 | Plaintiff's goodwill within this venue.

## GENERAL ALLEGATIONS

### Plaintiff and its Well-Known Brands and Products

8.  Plaintiff is a global design, marketing, and distribution company specializing in consumer fashion accessories that include an extensive line of men's and women's fashion watches and jewelry, handbags, small leather goods, belts, sunglasses, and accessories under its own and licensed brands.

9.  Plaintiff's strong retail presence includes over 600 retail locations and 4,000 wholesale locations globally, and employing over 15,000 employees worldwide. Plaintiff's wholesale customers include Macy's, Nordstrom, and Saks Fifth Avenue, to name a few. Plaintiff has company-owned retail and outlet stores throughout California in Los Angeles, Santa Monica, San Francisco, San Jose, Livermore, Costa Mesa, and Camarillo.

10.  Plaintiff's products are sold through department stores, specialty retail stores, specialty watch and jewelry stores, cruise ships, airlines, company-owned retail stores, licensed and franchised FOSSIL and WATCH STATION INTERNATIONAL stores, retail concessions operated by Plaintiff, and ecommerce sites.

11.  Plaintiff offers its extensive collection of watches, jewelry, and accessories through its website at www.fossil.com, as well as proprietary and licensed watches and jewelry brands, including the DIESEL® brand, through other managed and affiliate websites including www.watchstation.com.

12.  Since 1997, Plaintiff has continued to develop and license nationally or internationally recognized brand names, such as ADIDAS®, ARMANI EXCHANGE®, EMPORIO ARMANI®, BURBERRY®, CHAPS®, DIESEL®, DKNY®, KARL LAGERFELD®, KATE SPADE NEW YORK®, MARC BY MARC JACOBS™, MICHAEL KORS®, SKAGEN®, MICHELE®, and TORY

BURCH®, to name a few, in order to appeal to a wide consumer market. By owning much of its global distribution, Plaintiff is able to create strategies and brand imaging that protect and enhance Plaintiff's proprietary brands and licensed brands.

13. The wide scope of Plaintiff's brand licensing has allowed it to anchor a brand to a reliable distribution channel; thereby maintaining consistent brand image, focusing on quality without diluting brands through overlapping distribution channels.

14. In the watch and jewelry product categories, Plaintiff has a diverse portfolio of globally recognized owned and licensed brand names, including the DIESEL® brand, and distributes globally through various distribution channels, including wholesale and company-owned retail and outlet stores, and commercial websites.

15. As a result of Plaintiff's efforts, the quality of Plaintiff's brands and products, the high degree of promotion, and the popularity and recognition of Plaintiff's brands and products, Plaintiff's owned and licensed trademarks have been prominently placed in the minds of the public. Consumers, purchasers and the members of the public have become familiar with Plaintiff's products, and have come to recognize and associate Plaintiff's owned and licensed brands and products as fashion forward and quality products. Thus, Plaintiff's owned and licensed brands have acquired valuable reputations and goodwill among the public. Indeed, Plaintiff's owned and licensed brands and their respective marks are famous in the United States and internationally.

**Plaintiff is the Worldwide Licensee of the DIESEL® Mark for Watches**

16. Plaintiff is the exclusive worldwide authorized licensee for the DIESEL®-related family of marks as applied to watches for the Italian corporation Diesel S.p.A., the trademark owner of the DIESEL®-related family of marks.

17. Plaintiff has the power of attorney from Diesel S.p.A to enforce Diesel S.p.A's intellectual property rights related to watches.

18. Plaintiff's exclusive license of the DIESEL® mark as applied to watches includes, but is not limited to, numerous federal trademarks registered with the United States Patent and Trademark Office ("Diesel Trademarks"):

    a. DIESEL®: Reg. No.: 1,989,390, registered July 30, 1996;

    b. DIESEL ONLY THE BRAVE®: Reg. No. 1,939,141, registered December 5, 1995;

    c. DIESEL BLACK GOLD®: Reg. No. 3,956,724, registered May 10, 2011;

    d. Stylized D®: Reg. No. 3,225,322, registered April 3, 2007; and

    e. Stylized D®: Reg. No. 2,376,399, registered August 15, 2000;

**Defendants' Illegal and Infringing Conduct**

19. In light of the success of Plaintiff's owned and licensed brands and products as well as the reputation they have gained, Plaintiff and its products have become targets for unscrupulous individuals and entities who wish to take a "free ride" on its goodwill, reputation, and fame. Plaintiff has spent considerable effort and resources to build up its owned and licensed brands and marks.

20. A large number of these individuals or entities deal in pirated and/or counterfeit products featuring Plaintiff's licensed Diesel Trademarks. Their actions vary and include manufacturing, copying, exporting, importing, advertising, promoting, offering for sale, selling, and distributing counterfeit and otherwise unauthorized products bearing Plaintiff's licensed Diesel Trademarks.

21. Defendants use the Internet ecommerce website located at www.ebay.com ("eBay") to advertise, offer for sale, sell and distribute counterfeit products featuring Plaintiff's licensed Diesel Trademarks to consumers.

22. Defendants also utilizes the electronic payment processing services

located at PayPal.com ("PayPal"), which is provided by PayPal, Inc. Using PayPal, purchasers of products can transfer funds to sellers electronically and online, from any PayPal account to any other PayPal account.

23. Both eBay and PayPal are headquartered in California. In order for sellers, including Defendants, to make use of eBay and PayPal services, users must agree to terms and conditions set forth in eBay and PayPal's User Agreements, as well as pay various fees associated with any listing or transaction accomplished through eBay and PayPal's services.

24. On September 5, 2015, in its ongoing investigation of counterfeit sales of products bearing Plaintiff's licensed Diesel Trademarks from the State of California, Plaintiff's investigator purchased a purported "High Fashion Diesel Time Watches Tint Face & White Leather Band w/ Sweatguard" (Item # 171894006324), through eBay seller ID "fashionstation2015," for a cost of $19.95. Payment was made through Plaintiff's investigator's PayPal account. A true and correct copy of the PayPal Transactional Details receipt for this purchase is attached hereto as **Exhibit A** showing payment was made to Defendant, the seller ID as "fashionstation2015," and the seller email as "eliotandreu@outlook.com."

25. The purported "High Fashion Diesel Time Watches Tint Face & White Leather Band w/ Sweatguard" (Item # 171894006324) purchased from Defendant was inspected to determine authenticity. Plaintiff's inspection of the purchased item confirmed that the item Defendant sold to Plaintiff was in fact not a genuine DIESEL®-branded watch manufactured by Plaintiff.

26. On January 14, 2016, in its ongoing investigation of counterfeit sales of Plaintiff's trademarked products, from the State of California, Plaintiff's investigator purchased a purported "NEWLY ARRIVED ITEM!! DIESEL TIME WATCH ROSE GOLD BEZEL, WHITE PLEATHER BAND" (Item # 272103297524), through eBay seller ID "timelesstreasures2014," for a cost of $19.95. Payment was made through Plaintiff's investigator's PayPal account. A

true and correct copy of the PayPal receipt for this purchase is attached hereto as **Exhibit B** showing payment was made to Defendant, the seller ID as "timelesstreasures2014," and the seller email as "eliotandreu@outlook.com."

27.   The purported "NEWLY ARRIVED ITEM!! DIESEL TIME WATCH ROSE GOLD BEZEL, WHITE PLEATHER BAND" (Item # 272103297524) purchased from Defendant was inspected to determine authenticity.  Plaintiff's inspection of the purchased item confirmed that the item Defendant sold to Plaintiff was in fact not a genuine DIESEL®-branded watch manufactured by Plaintiff.

28.   Defendants advertise, market, and offer to sale numerous watches and accessories bearing Plaintiff's licensed Diesel Trademarks without Plaintiff's prior authorization.

29.   Through such business activities, Defendants purposely derived benefit from their interstate commerce by expressly targeting foreseeable purchasers in the State of California.  But for Defendants' advertising, soliciting and selling of counterfeit products featuring Plaintiff's licensed Diesel Trademarks, Plaintiff would not have been able to make purchases of the subject products.

30.   By these sales, and on information and belief, Defendants violated and continue to violate Plaintiff's exclusive licensed rights, and use images and marks that are confusingly similar to, identical to, and/or constitute counterfeit reproductions of Plaintiff's licensed Diesel Trademarks to confuse consumers and aid in the promotion and sales of its unauthorized goods. Defendants' conduct and use began long after Diesel S.p.A.'s adoption and use of the Diesel Trademarks, after Plaintiff obtained the worldwide exclusive license pertaining to watches for the trademark registrations alleged herein, and after the Diesel Trademarks became famous.  Indeed, Defendants had knowledge of Diesel S.p.A.'s ownership of the marks, and of the fame in such marks, prior to the

actions alleged herein, and adopted them in bad faith and with intent to cause confusion, tarnish, counterfeit and dilute the marks and products. Neither Diesel S.p.A., Plaintiff, nor any authorized agents have consented to Defendants' use of the Diesel Trademarks in the manner complained of herein.

31. Defendants' actions were committed in bad faith and with the intent to dilute the Diesel Trademarks, and to cause confusion and mistake, and to deceive the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants, and/or Defendants' counterfeit and unauthorized goods. By their wrongful conduct, Defendants have traded upon and diminished the goodwill in the Diesel Trademarks.

32. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following acts, all of which have and will continue to cause irreparable harm to Plaintiff: (i) infringed, tarnished, diluted Plaintiff's rights in the licensed Diesel Trademarks; (ii) applied counterfeit marks; (iii) misled the public into believing there is an association or connection between Defendants and Plaintiff and/or the products advertised and sold by Defendants and Plaintiff; (iv) used false designations of origin on or in connection with its goods and services; (v) committed unfair competition; (vi) engaged in counterfeiting; and (vii) unfairly profited from such activity. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## FIRST CAUSE OF ACTION

**(Infringement of Registered Trademarks Against Defendant ELIOT ANDREU; and DOES 1-10, Inclusive)**

**[15 U.S.C. § 1114/*Lanham Act* § 32(a)**

33. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

34. Plaintiff has continuously used the licensed DIESEL Trademarks in

connected with watches in interstate commerce.

35. Plaintiff, as the exclusive worldwide licensee of the Diesel Trademarks for watches, have standing to maintain an action for trademark infringement under the U.S. Trademark Statute 15 U.S.C. § 1114.

36. Defendants are and at the time of their actions complained of herein were actually aware that Diesel S.p.A. is the registered trademark holder of the licensed Diesel Trademarks.

37. Defendants did not and failed to obtain the consent or authorization of Plaintiff, as the exclusive licensee, or of Diesel S.p.A, to deal in and commercially distribute, market and sell products bearing the asserted marks into the stream of commerce.

38. Defendants intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or colorable imitations of the asserted marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods by offering, advertising, promoting, retailing, selling, and distributing counterfeit products bearing the licensed Diesel Trademarks.

39. Defendants reproduced, counterfeited, copied, and colorably imitated the licensed Diesel Trademarks and applied such reproductions, counterfeits, copies, or colorable imitations to emblems, labels, signs, prints, packages, wrappers, receptacles, websites and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Defendants thereupon offered, advertised, promoted, retailed, sold, and distributed counterfeit products bearing the licensed Diesel Trademarks.

40. Defendants' egregious and intentional use and sale of counterfeit items bearing the licensed Diesel Trademarks is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendants' items are authentic products manufactured by Plaintiff.

41. Defendants' acts have been committed with knowledge of the Diesel Trademarks, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive.

42. Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the licensed Diesel Trademarks and the goodwill associated therewith, for which it has no adequate remedy at law; thus, Plaintiff requests injunctive relief

43. Defendants' continued and knowing use of Plaintiff's licensed Diesel Trademarks without Plaintiff's or Diesel's consent or authorization constitutes intentional infringement of federally registered trademarks in violation of Section 32 of the *Lanham Act*, 15 U.S.C. § 1114. Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies provided by section 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs, statutory damages and/or prejudgment interest.

## SECOND CAUSE OF ACTION

**(False Designation of Origin & Unfair Competition Against Defendant ELIOT ANDREU; and DOES 1-10, Inclusive)**

**[15 U.S.C. § 1125(a)/*Lanham Act* § 43(a)]**

44. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

45. Plaintiff, as the exclusive worldwide licensee of the licensed Diesel Trademarks with respect to watches, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, *Lanham Act* section 43(a) (15 U.S.C. § 1125). The asserted marks are fanciful, inherently distinctive, and/or have otherwise acquired distinctiveness.

46. Defendants have without authorization, on or in connection with its

goods and services, used in commerce marks that are confusingly similar to the licensed Diesel Trademarks, and/or have made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of Defendants' goods or services or commercial activities.

47. Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, and will cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of the licensed Diesel Trademarks.

48. On information and belief, the conduct of Defendants have been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Plaintiff's rights.

49. Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to and constitute a counterfeit reproduction of the asserted marks would cause confusion, mistake, or deception among purchasers, users and the public.

50. Defendants' egregious and intentional use and sale of fake, pirated and counterfeit items bearing the asserted marks unfairly competes with Plaintiff and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine DIESEL®-branded products.

51. Defendants' continuing and knowing use of the Diesel Trademarks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 U.S.C. § 1125(a), causing Plaintiff to suffer

substantial and irreparable injury for which it has no adequate remedy at law.

52. Defendants' wrongful conduct has permitted or will permit it to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and have been deprived and will be deprived of the value of the licensed Diesel Trademarks as commercial assets in an amount as yet unknown but to be determined at trial. Plaintiff seeks damages and an accounting of Defendants' profits, and requests that the Court grant Plaintiff's three times that amount in the Court's discretion.

53. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the *Lanham Act*, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## THIRD CAUSE OF ACTION

**(Trademark Dilution Against Defendant ELIOT ANDREU; and DOES 1-10, Inclusive)**

**[15 U.S.C. § 1125(c)]**

54. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

55. Plaintiff's licensed Diesel Trademarks are distinctive and famous within the meaning of the *Lanham Act*.

56. Upon information and belief, Defendants' unlawful actions began long after the Diesel Trademarks became famous, and Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiff's reputation and to dilute the asserted marks. Defendants' conduct is willful,

wanton and egregious.

57. Defendants' intentional sale of fake, pirated and counterfeit items bearing the Diesel Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products manufactured, distributed and sponsored by Plaintiff. The actions of Defendants complained of herein have diluted and will continue to dilute Plaintiff's asserted and other marks, and are likely to impair the distinctiveness, strength and value of Plaintiff's asserted marks, and injure the business reputation of Plaintiff and its licensed marks.

58. Defendants' acts have caused and will continue to cause Plaintiff irreparable harm. Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

59. As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 U.S.C. section 1125(c), Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§ 1116, 1117, 1118, and 1125(c), including Defendants' profits, actual and statutory damages, treble damages, reasonable attorney's fees, costs and prejudgment interest.

**FOURTH CAUSE OF ACTION**

**(Unlawful, Unfair, Fraudulent Business Practices Against Defendant ELIOT ANDREU and DOES 1-10, Inclusive)**

[*California Business & Professions Code* § 17200 *et seq.*]

60. Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

61. By marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit products featuring the licensed Diesel Trademarks,

Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of the *California Business and Professions Code* § 17200 *et seq*.

62. Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit products featuring the licensed Diesel Trademarks is in violation and derogation of Plaintiff's rights and is likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public. Defendants' conduct was intended to cause such loss, damage and injury.

63. Defendants knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit product would cause confusion mistake or deception among purchasers, users and the public.

64. By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit versions of Plaintiff's licensed Diesel Trademarks and products, Defendants intended to, did and will continue to induce customers to purchase its false and counterfeit products by trading off the extensive goodwill built up by Plaintiff in the licensed Diesel Trademarks.

65. Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive, and in disregard of Plaintiff's rights.

66. Defendants' wrongful conduct, as alleged above, has permitted and will permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff

has been and will be deprived of substantial sales of their products in an amount as yet unknown but to be determined at trial, and have been and will be deprived of the value of their licensed trademarks as commercial assets, in an amount as yet unknown but to be determined at trial. Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from its infringing activity, and their actual and/or compensatory damages.

67. Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above. Plaintiff seeks injunctive relief.

68. Plaintiff further requests the court issue an order to "freeze" any assets or impose a constructive trust over all monies and assets in Defendants' possession which rightfully belong to Plaintiff.

WHEREFORE, Plaintiff FOSSIL GROUP, INC., pray for judgment against Defendant ELIOT ANDREU; and DOES 1-10, inclusive, and each of them, as follows:

1. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. § 1114(a);
2. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. § 1125(a);
3. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. § 1125(c);
4. In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of the licensed Diesel Trademarks pursuant to the Lanham Act, for statutory damages pursuant to 15 U.S.C. § 1117(c), which election Plaintiff will make prior to the rendering of final judgment;

5. For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices under *California Business and Professions Code* § 17200;

6. For temporary, preliminary and permanent injunctive relief from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any counterfeit product; the unauthorized use of any mark, copyright or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

7. For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including the amount of monies that should have been paid if Defendants' complied with their legal obligations, or as equity requires;

8. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

9. For destruction of the infringing articles in Defendants' possession under 15 U.S.C. § 1118;

10. For treble damages suffered by Plaintiff as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 U.S.C. § 1117(b);

11. For damages in an amount to be proven at trial for unjust enrichment;

12. For an award of exemplary or punitive damages in an amount to be determined by the Court;

13. For Plaintiff's reasonable attorney's fees;

14. For all costs of suit; and

15. For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff FOSSIL GROUP, INC., respectfully demand a trial by jury in this action pursuant to Local Rule 38-1.

DATED: April 15, 2016  JOHNSON & PHAM, LLP

By: /s/ Christopher Q. Pham
Christopher D. Johnson, Esq.
Christopher Q. Pham, Esq.
Marcus F. Chaney, Esq.
Nicole L. Drey, Esq.
Hung Q. Pham, Esq.
Attorneys for Plaintiff
FOSSIL GROUP, INC.